## ROBERT G. SHAW *versus* DAVID NUDD.

A written authority is not necessary in order to enable an agent to sign, for his principal, a contract required by the statute of frauds to be in writing.

W, as agent for S, agreed with N, at Newburyport, to purchase of him a quantity of fish then at Newburyport, and N told W to go to C the next day and get him to sign the contract for N, if he was not in town himself. W accordingly wrote a contract stating a sale of the fish by N to S for " 12s. 3d. per quintal and nine cents per quintal for delivering them in Boston, the wharfage to be paid by S, all other incidental charges to be paid by N, cash to be paid in Boston, the fish to be at S's risk when on board the vessel at Newburyport." C signed this contract for N and received from W a counterpart signed by W in behalf of S. C had no authority to act for N except that communicated by W. C delivered the counterpart to N the same day, who received it without objection, and did not object to it for several days. N having refused to deliver the fish, S brought an action on the written contract to recover damages for the non-delivery. *Held ;* —

That N was bound by the contract, even if C had no authority to sign it, having adopted it : —

That by the contract the fish were t, be delivered in Boston, and would not become the property of S until delivered there : —

That therefore the damages recoverable must depend on the value of the fish at Boston at the time when they ought to have been delivered.

THIS was an action for the breach of the contract set forth below.

The case was submitted to the Court on the following statement of facts agreed by the parties.

The defendant, on December 6, 1826, agreed with T. Winsor, the plaintiff's agent, to sell the plaintiff 627 quintals of fish, then on the flakes of one Pettengill as agent of Philip Coombs, situated near Newburyport. No earnest money was paid, nor written contract signed at this time. The bargain was made at Newburyport, where neither of the parties resided ; and Nudd told Winsor to go to Coombs the next day, if he, Nudd, should not be in Newburyport, and get Coombs to sign the contract in his behalf. Accordingly Winsor went the next day to Coombs, and asked him to sign the contract as agent for Nudd. Coombs at first declined signing, but finally yielded, not doubting that the contract was truly stated, from

what he had heard respecting the business, and signed the fol-lowing contract written by Winsor, dated Newburyport, December 7, 1826. — " Sold R. G. Shaw Esq. my fare of Labrador fish (slimy and broken excepted) through the agency of Thomas Winsor, for 12s. 3d. per quintal and nine cents per quintal for delivering them in Boston, the fish to be properly dried for shipping, the wharfage to be paid by said Shaw, all other incidental charges to be paid by said Nudd, cash to be paid in Boston, the fish at said Shaw's risk when on board the vessel at Newburyport. Philip Coombs for David Nudd. Capt. John T. Ross is to decide as to the order of the fish."

A counterpart of this contract was signed by Winsor on behalf of Shaw, and left with Coombs.

Coombs had no authority to act as Nudd's agent or attorney in respect to any of his business, nor had he any special authority in this instance except what he derived from Winsor's communication. Winsor was himself interested in the profits of this transaction.

Nudd came to Newburyport the same day, and Coombs handed him the contract, which he read and put in his pocket. Coombs told him that if the paper did not conform to the agreement, he must withdraw it, but Nudd at this time made no objection to it. But a few days afterwards Coombs understood Nudd to say, that he would not deliver the fish unless he received the same that one Joseph P. Russell received, which was 12s. 6d. John T. Ross, acting under a written authority from Winsor to attend to the weight and delivery of the fish, and to send them round to Boston, called on Nudd on December 16, and as Shaw's agent demanded the fish; but Nudd refused to deliver them, saying that he would not let Ross have them until he knew what Russell got for his; and on the 21st he again refused to deliver them, unless he could get the same price that Lovell Brown got for a lot sold in Boston some days after the bargain was made.

Afterwards, in conversation with Coombs, who said that the breach of contract would injure him (Coombs), Nudd said that it could not, for no earnest money had been paid.

Before this time Nudd had stated to Ross, in answer to 1

previous inquiry, that he was to carry the fish to Boston in his own vessel.

On December 6th, the day when the bargain was made, and before the written contract was signed, Nudd told one Merrill that he had sold his fish to Winsor for 12s. 3d. cash on delivery of them in Boston, and that he was to have nine cents for delivery of them there. On the same day Nudd stated to Russell, that he, Nudd, was to have 12s. 3d. and more, if more was given to any one else. Nudd sold the fish, about the 17th of March, 1827, for 17s. 3d. cash.

Judgment was to be given for the plaintiff, if the Court should consider Nudd legally bound by the contract declared on, otherwise for the defendant. If judgment was given for the plaintiff, the damages were to be at the rate of 13s. 6d. per quintal, if the Court should be of opinion that Newburyport was the place of delivery fixed by the contract, but at 16s. if Boston was the place of delivery, or at 17s. 6d. if the Court should think Nudd liable for the price he received for the fish. The defendant in the two last cases claims to deduct 9 cents per quintal, the price in the contract for transporting the fish to Boston.

*Loring*, for the plaintiff, admitted that it was necessary for the contract to be reduced to writing, in order to be binding on Nudd ; but he contended that Coombs was the agent of Nudd for signing the contract. It is well settled that a verbal authority to sign a written contract is sufficient. *Merritt* v. *Clason*, 12 Johns. R. 102 ; *Clinan* v. *Cooke*, 1 Sch. & Lefr 22. Even if Coombs had not sufficient authority, yet Nudd, by afterwards receiving the writing without objection, ratified the act of Coombs as his agent. *Smith* v. *Cologan*, 2 T. R. 188, note.

The delivery of the fish was to be in Boston. The damages therefore must depend upon the price in that place ; and the plaintiff is entitled to the highest price at any time between the time of the neglect to deliver and the time of trial. *Shepherd* v. *Johnson*, 2 East, 211 ; *West* v. *Beach*, 3 Cowen, 82. It is true that *Gray* v. *Portland Bank*, 3 Mass. R. 364, gives a differen rule for damages, as well as *Bush* v. *Canfield*,

*Shaw*
*v.*
*Nudd.*

*March 31st*
*1828.*

2 Connect. R. 485 ; *Gainsford* v. *Carroll*, 4 Dowl. & Ryl. 161 ; *Brackett* v. *M'Nair*, 14 Johns. R. 170.

*Cushing*, for the defendant. It is not disputed that a parol authority to sign a written contract is valid. *Needham* v. *Gorham*, 6 Dane's Abr. 124 ; *Anonymous*, 12 Mod. 564 ; *Coles* v. *Trecothick*, 9 Ves. 251. But Winsor, being a party interested, could communicate no authority to Coombs. The contract was never ratified by Nudd, but on the contrary was repudiated by him within a reasonable time.

The place of delivery was at Newburyport, for the fish were to be at Shaw's risk when put on board there. The damages therefore must depend on the price at Newburyport. *Mercer* v. *Jones*, 3 Campb. 477 ; *Greening* v *Wilkinson*, 1 Carr. & Payne, 626 ; *Leigh* v. *Patterson*, 8 Taunt. 541 ; *S. C. 2* Moore, 588 ; *Gainsford* v. *Carroll*, 2 Barn. & Cressw. 624 ; *Shepherd* v. *Hampton*, 3 Wheaton, 200 ; *Kennedy* v. *Whitwell*, 4 Pick. 466.

PARKER C. J. delivered the opinion of the Court. We have no doubt the contract on which the action is brought, is the defendant's contract. He, by the intervention of Winsor, who was the plaintiff's agent, authorized Coombs to enter into the contract for him, and he received from Coombs a counterpart of the contract signed by Winsor for Shaw, without objecting to it ; and it appears abundantly by his conversation with divers witnesses, that the contract was made for him.

There was no necessity that the authority of Coombs should be in writing,[1] nor can it be objected that Winsor, who communicated the authority from Nudd to Coombs, was interested in the speculation. The adoption of the contract by Nudd would be quite sufficient, even if there were no antecedent authority. *Merritt* v. *Clason*, 12 Johns. R. 103.[2]

There being then a contract, the questions are, what is the purport and meaning of it ; has it been broken ; what are the damages.

The plaintiff contends that the writing is one entire contract for the sale and delivery of the fish in Boston ; the defendant,

---

[1] See Story's Comm. on Agency, 51, 52.

[2] See *First Parish in Sutton* v. *Cole*, 3 Pick. 232 ; *Emerson* v. *Newbury*, 13 Pick. 279 ; Story's Comm. on Agency, 234, *et seq*

that it is a sale at Newburyport, and an independent contract to carry the fish to Boston.   And the damages will be greater or less, according to the adoption of one or the other of these constructions.   If the sale was completed at Newburyport, then the price of the fish there when they were demanded, is the rule of damages ; if it was an executory contract to sell and deliver in Boston, then the price at Boston.

We think the latter is the true construction ; that it is an entire contract ; that the fish did not become Shaw's on the execution of the writing ; there was no delivery ; they were liable to attachment as Nudd's ; and Shaw could not maintain trover against a second *bonâ fide* purchaser.   The fish were agreed to be sold, not sold ; that is, the property in them was not transferred.

The contract appears to us to be, to sell and deliver the fish at Boston.   Twelve shillings and three pence were the price per quintal, but nine cents were to be added for the expense of transportation.   Shaw was to pay wharfage, and the fish were to be at his risk when on board.   Why was this, if the sale was absolute at Newburyport ?   Nudd is to pay other incidental charges, that is, for shifting the fish from the flakes to the wharf, culling, &c.   It is evident that the property in the fish was to remain in Nudd, and that he could have retained them in Boston until the price was paid.   The assumption of risk by Shaw, was an agreement to insure.   There were not two contracts, but one.   The defendant stipulated to carry his fish to Boston and deliver them to Shaw on payment of the price, with the additional sum for transportation.

What then will indemnify the plaintiff for the breach of this contract ?   Only the value of the fish at the place where they ought to have been delivered.   Shall the defendant voluntarily and wantonly break his contract and gain by it ?   We think not.   The purchaser is entitled to the thing sold, or its value. As to bringing down the damages to the time of trial, that would be so fluctuating and uncertain, it cannot be a good rule. The wrong is done when the contract is broken, and the value of the thing when and where it ought to be delivered, is the indemnity.   *Gainsford* v. *Carroll*, 2 Barn. & Cressw. 624 ; *Shepherd* v. *Hampton*, 3 Wheaton, 200 ; *Kennedy* v. *Whit-*

*well*, 4 Pick. 467 ; [2d edit. 467, note 1;] *Cooper* v. *Chitty*, 1 Burr. 31 ; 3 Dane's Abr. 194 ; *Mercer* v. *Jones*, 3 Campo. 477.[1]

*Judgment for the plaintiff.*

---

[1] See *Parks* v. *Boston*, 15 Pick. 206 ; *Pearson* v. *Purkett*, 15 Pick. 264 ; *Stone* v. *Codman*, 15 Pick. 300 ; *Sargent* v. *Franklin Ins. Co.* 8 Pick. 100 ; Chitty on Contr. (4th Am. ed.) 683, in notes, and 352, 353, and notes ; *Wells* v. *Abernethy*, 5 Connect. R. 222 ; *Gleason* v. *Pinney*, 5 Cowen, 152 ; *Nelson* v. *Ford*, 5 Hammond, 474 ; *Stevens* v. *Lyford*, 7 New Hampsh. R. 360 ; *Dey* v. *Dox*, 9 Wendell, 129 ; *Shepherd* v. *Hampton*, 3 Wheaton, 200, 204 ; *Clark* v. *Pinney*, 7 Cowen, 687 ; *Connell* v. *M'Clean*, 6 Har. & Johns. 297 ; *Willings* v. *Consequa*, 1 Peters's Cir. Ct. R. 172, 176 ; *Williamson* v. *Dillon*, 1 Har. & Gill, 444